1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF CALIFORNIA
8
9
10    STEVEN FRANK JACKSON,
                                          Case No. CIV 07-0555RJB
11                    Petitioner,
                                          ORDER ON PETITION
12           v.                           FOR WRIT OF HABEAS
                                          CORPUS
13    T. FELKER,
14                    Respondent.
15

16           This matter comes before the court on petitioner's petition for writ of habeas corpus.  Dkt. 1. The
17    court has considered the relevant documents and the remainder of the file herein.

18                        PROCEDURAL AND FACTUAL HISTORY
19           Petitioner is a state prisoner currently incarcerated at High Desert State Prison in Susanville,
20    California. He filed this petition for writ of habeas corpus to challenge his 2004 Sacramento County
21    conviction.  Dkt. 1.
22           Petitioner was convicted by a jury of first degree burglary (Cal. Pen. Code, § 459) (Count 16);
23    sexual battery (Cal. Pen. Code, § 243.4, subd. (a) (Count 15); forcible oral copulation (Cal. Pen. Code, §
24    288a, subd. (c)(2) (Count 14); three counts of forcible sexual penetration (Cal. Pen. Code, § 289, subd.
25    (a)(1) (Counts 11, 12, 13); and ten counts of forcible rape (Cal. Pen. Code, § 261, subd. (a)(2) (Counts 1-
26    10).  In bifurcated proceedings, the trial court found two prior convictions to be true for purposes of Cal.
27    Pen. Code, section 667, subdivisions (a), (b) -(i) and section 1170.12 (the three strikes law).  As a result o
28

ORDER
Page - 1

the convictions and enhancement, petitioner was sentenced to a determinate state prison term of ten years plus an indeterminate term of 300 years to life.

The California Court of Appeal summarized the facts of the case as follows:

> Defendant committed numerous sex offenses upon the 72-year-old victim after breaking into her apartment in the early morning hours. DNA evidence from saliva on the victim's breast established defendant's identity as the perpetrator. Defendant lived in the same apartment complex as the victim.

*People v. Jackson*, 2006 WL 1660795 at *1 (Cal.App. 3 Dist.).

Petitioner filed a direct appeal with the California Court of Appeal, Third Appellate District, which affirmed his conviction on June 15, 2006. *People v. Jackson*, 2006 WL 1660795. Petitioner's petition for review was denied by the California Supreme Court on August 30, 2006. Dkt. 29, Lodged Document 6.

On March 21, 2007, petitioner filed this petition for writ of habeas corpus. Dkt. 1. On May 22, 2007, the court appointed counsel to represent petitioner. Dkt. 7. On October 16, 2007, petitioner filed a first amended petition for writ of habeas corpus. Dkt. 19. On February 14, 2008, respondent filed an answer to the petition and relevant portions of the record. Dkt. 28 and 29. On May 16, 2008, petitioner filed a traverse. Dkt. 38. The court has carefully reviewed the entire record in this case.

## CLAIMS

Petitioner raises the following three claims in his amended petition:

1.    Whether, because the prosecutor used peremptory challenges to strike two prospective black jurors called to the jury box, and the prosecutor's given reason was pretext for racial discrimination, Mr. Jackson's subsequent conviction violates the Sixth and Fourteenth Amendments of the United States Constitution.

2.    Whether criminal propensity evidence is admissible in California under the United States Constitution.

3.    Whether the trial court violated Mr. Jackson's Due Process rights by telling the jury that if proved, the jury could rely on criminal disposition alone to find Mr. Jackson guilty because the standard of proof for a true finding on propensity is less than reasonable doubt.

Docket 19, at 12-13.

## EXHAUSTION

Before claims may be raised in a federal habeas corpus petition, state remedies must be exhausted; or an applicant must show there is either an absence of available state corrective process or that circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1); *see also, Rose v. Lundy*, 455 U.S. 509 (1982). A claim has been exhausted once it has been

1  fairly presented to the state's highest court and the court has had the opportunity to rule on the merits of

2  the claim.  *See O'Sullivan v. Boerckel*, 119 S.Ct. 1728, 1733-34 (1999);  *Picard v. Connor*, 404 U.S. 270,

3  275-276 (1971); *Batchelor v. Cupp*, 693 F.2d 859, 862(9th Cir. 1982), *cert. denied*, 463 U.S. 1212

4  (1983).

5  A petitioner must present the claims to the state's highest court based upon the same federal legal

6  theory and factual basis as the claims are subsequently asserted in the habeas petition.  *Hudson v. Rushen*,

7  686 F.2d 826, 829-830 (9th Cir. 1982), *cert denied* 461 U.S. 916 (1983); *Schiers v. California*, 333 F.2d

8  173, 176 (9th Cir. 1964).   Specifically, a petitioner must apprise the state courts that an alleged error is

9  not only a violation of state law, but a violation of the Constitution.  *Duncan v. Henry*, 513 U.S. 364, 365-

10  66 (1995).  Vague references to broad constitutional principles such as due process, equal protection, or a

11  fair trail do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hiivala*

12  *v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert.*

13  *denied*, 120 S.Ct. 815 (2000).  A petitioner must include reference to a specific federal constitutional

14  guarantee as well as a statement of the facts that entitle the petitioner to relief.  *Gray v. Netherland*, 518

15  U.S., at 162-163.

16  In this case, petitioner exhausted his claims in state court.  Accordingly, the court has reviewed the

17  claims on the merits.

18  <u>STANDARD OF REVIEW</u>

19  A habeas corpus petition shall not be granted with respect to any claim adjudicated on the merits in

20  the state courts unless the adjudication either  (1) resulted in a decision that was contrary to, or involved an

21  unreasonable application of, clearly established federal law, as determined by the Supreme Court; or (2)

22  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

23  presented to the state courts.  28 U.S.C. §2254(d). Under the "contrary to" clause, a federal habeas court

24  may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court

25  on a question of law or if the state court decides a case differently than the Supreme Court has on a set of

26  materially indistinguishable facts. *Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000). Under the

27  "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies

28

1  the correct governing legal principle from this Court's decisions but unreasonably applies that principle to

2  the facts of the prisoner's case. *Id.*

3       A determination of a factual issue by a state court shall be presumed correct, and the applicant has

4  the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C.

5  §2254(e)(1).

6                                    <u>DISCUSSION</u>

7  **1.     Peremptory Challenges**

8       *Claim.*  Petitioner contends that the prosecutor exercised his peremptory challenges in a racially

9  biased manner in eliminating two African-Americans from the jury panel.  Petitioner claims that the

10  prosecutor violated his Sixth Amendment right to an impartial jury and his Fourteenth Amendment right to

11  Equal Protection.

12       *California Court of Appeal Decision.*  In reviewing this claim, the California Court of Appeal

13  concluded as follows:

14       During jury selection, defense counsel claimed the prosecutor had exercised his peremptory
         challenges in a racially biased manner in eliminating two African-Americans from the jury panel.
15       Defendant specifically cited the prosecutor's peremptory challenges of prospective juror S., a male,
         and prospective juror J., a female. Both are African-American as is defendant. The trial court had
16       the prosecutor explain his reasons and thereafter rejected defendant's claim. Defendant contends on
         appeal that the trial court erroneously denied his *Wheeler-Batson* motion. We disagree.

17

18       " 'The use of peremptory challenges to remove prospective jurors on the sole ground of group bias
         violates the right to trial by a jury drawn from a representative cross-section of the community
19       under article I, section 16 of the California Constitution (*People v. Wheeler* [, *supra*, 22 Cal.3d at
         pp. 276-277] ) as well as the equal protection clause of the Fourteenth Amendment to the United
20       States Constitution. (*Batson v. Kentucky* [, *supra*,] 476 U.S. [at p.] 89).' [Citation.] 'A party who
         suspects improper use of peremptory challenges must raise a timely objection and make a prima
21       facie showing that one or more jurors has been excluded on the basis of group or racial identity....
         Once a prima facie showing has been made, the prosecutor then must carry the burden of showing
22       that he or she had genuine nondiscriminatory reasons for the challenge at issue.'[Citation.] ' "[T]he
         trial court must then decide ... whether the opponent of the strike has proved purposeful ...
23       discrimination." ' [Citation.]" (*People v. Ward* (2005) 36 Cal.4th 186, 200(*Ward*).)

24       " 'The trial court's ruling on this issue is reviewed for substantial evidence.' [Citation.] 'We review
         a trial court's determination regarding the sufficiency of a prosecutor's justifications for exercising
25       peremptory challenges " 'with great restraint.' "[Citation.] We presume that a prosecutor uses
         peremptory challenges in a constitutional manner and give great deference to the trial court's ability
26       to distinguish bona fide reasons from sham excuses. [Citation.] So long as the trial court makes a
         sincere and reasoned effort to evaluate the nondiscriminatory justifications offered, its conclusions
27       are entitled to deference on appeal. [Citation.]' [Citation.] '[I]n fulfilling [this] obligation, the trial
         court is not required to make specific or detailed comments for the record to justify every instance
28       in which a prosecutor's [nondiscriminatory] reason for exercising a peremptory challenge is being
         accepted by the court as genuine. This is particularly true where the prosecutor's
         [nondiscriminatory] reason for exercising a peremptory challenge is based on the prospective juror's

demeanor, or similar intangible factors, while in the courtroom.' [Citation.]" ( *Ward, supra*, 36 Cal.4th at p. 200.)

"The proper focus of a *Batson/Wheeler* inquiry, of course, is on the subjective genuineness of the race-neutral reasons given for the peremptory challenge, not on the objective *reasonableness* of those reasons. [Citation.] So, for example, if a prosecutor believes a prospective juror with long, unkempt hair, a mustache, and a beard would not make a good juror in the case, a peremptory challenge to the prospective juror, sincerely exercised on that basis, will constitute an entirely valid and nondiscriminatory reason for exercising the challenge. [Citation.] It matters not that another prosecutor would have chosen to leave the prospective juror on the jury. Nor does it matter that the prosecutor, by peremptorily excusing men with long unkempt hair and facial hair on the basis that they are specifically biased against him or against the People's case or witnesses, may be passing over any number of conscientious and fully qualified potential jurors. All that matters is that the prosecutor's reason for exercising the peremptory challenge is sincere and legitimate, legitimate in the sense of being nondiscriminatory. '[A] "legitimate reason" is not a reason that makes sense, but a reason that does not deny equal protection. [Citations.]' " (*People v. Reynoso* (2003) 31 Cal.4th 903, 924.)

In *Miller-El v. Dretke* (2005) 545 U.S. 231 [162 L.Ed.2d 196](*Miller-El*) and *Johnson v. California* (2005) 545 U.S. 162 [162 L.Ed.2d 129], the United States Supreme Court clarified the standards applicable to a defendant's motion claiming the prosecutor engaged in racial bias during jury selection.

In *Johnson v. California, supra*, 545 U.S. at pages ___ [162 L.Ed.2d at pp. 138, 141], the United States Supreme Court rejected a test previously established by the California Supreme Court for a prima facie showing of racial bias and held instead of " 'more likely than not' " the standard to be applied is whether " 'the totality of the relevant facts gives rise to an inference of discriminatory purpose.' "

*Miller-El, supra*, 545 U.S. at page ___ [162 L.Ed.2d at p. 221] held that comparative juror analysis may be conducted in evaluating whether a prosecutor's facially neutral reason conceals racial bias and the trial judge is required to "assess the plausibility of that reason in light of all evidence with a bearing on it." Whether comparative juror analysis must be conducted for the first time on appeal is a question the California Supreme Court has not since settled but instead has assumed it was required. (See *Ward, supra*, 36 Cal.4th at p. 203; *People v. Schmeck* (2005) 37 Cal.4th 240, 270; *People v. Gray* (2005) 37 Cal.4th 168, 188-189; *People v. Cornwell* (2005) 37 Cal.4th 50, 71.) We will review the comparisons drawn by defense appellate counsel on the merits.

*Prospective Juror S.*

Juror S., a postal worker, requested to be questioned in private. Outside the presence of the other jurors, juror S. explained that his niece and nephew had been molested by his brother-in-law, that his friend had been charged and convicted of rape in a high profile case in Sacramento, and that his father had been robbed. The prosecutor asked, "When [defense counsel] just asked you a question, if you could be fair and impartial, you hesitated a little bit and kind of bit your lip ... [¶] ... you hesitated a little bit, and you kind of-your mouth moved. Those are the things I was watching on you." Juror S. responded that he hesitated because he had a "lot of baggage" about his niece and nephew. He told the court he was comfortable sitting on this case.

Along with the other prospective jurors, juror S. was asked about friends or relatives in law enforcement. Juror S. knew and socialized with a Sacramento police officer as well as two retired deputy sheriffs, a husband and wife. When asked about negative encounters with law enforcement, juror S. explained that although 20 years ago, for a period of about 14 years from the age of 16 years old to 30 years old, he had been stopped numerous times by mostly Caucasian officers when driving or walking in Rancho Cordova, Fresno and the Sacramento area because of his race and age. The prosecutor asked whether he had reported these encounters. Juror S. responded, "Seemed

like it would be a waste of time because I would be complaining to the people that I felt I was being harassed by." He insisted that his negative encounters with law enforcement officers would not affect his ability to be fair and to judge the credibility of witnesses.

*Prospective Juror J.*

Juror J. was employed in "property management." She had lived in the Greenhaven area for 18 years. She knew people who had been arrested for driving under the influence, insurance fraud and mayhem and had gone to some of the trials. When the court asked juror J. whether there was any reason why she would not be fair to both sides, she said "no" and then revealed that she had been to graduate school in 1992 and had completed an internship "at the branch in the psychiatric department." Juror J. apparently indicated on her juror questionnaire form that she had a master's degree in social work.

*Peremptory Challenges*

After the first set of jurors in the box were questioned, the prosecutor exercised his fifth peremptory challenge to remove prospective juror S.

Prospective juror J. was seated and questioned some time later. The prosecutor exercised his twelfth peremptory challenge to remove prospective juror J. Defense counsel then made a *Wheeler* motion, arguing the prosecutor used his peremptory challenges based on the race of prospective jurors S. and J. The court noted that both jurors were African-American as was another prospective juror. The judge did not state on the record that she found that defendant had made a prima facie showing but instead simply asked the prosecutor for his reasons.

The prosecutor responded, "Well, I'm not sure [defense counsel has] been able to show there's been some sort of systematic exclusion. ( [Juror] [r]edacted) is in the box. He was in the box when I passed twice on the jury, which would indicate that if the defense would have passed after me, ([Juror] Redacted) would have been a juror. [¶] Mr. S[.] has had a history with law enforcement where for a certain point in his life he felt he was stopped for no reasons. Whether or not he still harbors any animosity is not something I wanted to roll the dice with. [¶] Ms. J[.], she was not dismissed for any race-based purpose. She was dismissed based on her educational background. I don't like to keep social workers. [¶] She's got a master in social work. She worked in the jail, yes, but she worked in the, probably in the psych unit as a sociologist of some sort. I don't have any other social workers up on the panel. And if I had my choice, I wouldn't have any. [¶] So that was my reason for dismissing her."

Defense counsel took issue only with the prosecutor's stated reason for removing juror J. Defense counsel argued that removing juror J. for "some educational or occupational reason ... [was] offensive and in itself invidious discrimination." The court noted that no one had objected to defense counsel exercising his peremptory challenges to remove all potential jurors with law enforcement experience. In denying the motion, the court stated, "in view of the fact [the prosecutor] has mentioned that social worker degree, which [has] absolutely nothing to do with her race, I am going to deny the *Wheeler* motion."

*Analysis*

Initially, we note that the trial court did not expressly find that defense counsel had made a prima facie showing. But the trial court determined the prosecutor's reasons were race-neutral so the issue of defendant's showing is moot. (*Ward, supra*, 36 Cal.4th at p. 200, citing *Hernandez v. New York* (1991) 500 U.S. 352, 359 [114 L.Ed.2d 395, 405].)

Defendant claims that juror 8, who was not African-American, had had several negative experiences with law enforcement but was allowed to remain on the jury. Even so, defendant claims that the prosecutor's reason for exercising his peremptory right to excuse juror S. is not supported

by the record since prospective juror S. stated that he did not judge all law enforcement officers based on the behavior of one and that he had friends who were officers and regularly socialized with a retired couple who had been deputy sheriffs.

The prosecutor stated a nondiscriminatory reason for exercising his peremptory challenge to remove juror S. Juror S. stated that he had been stopped numerous times based on his race and age and considered it harassment. Peremptory challenges based on a negative experience with law enforcement is a proper race-neutral reason. (*People v. Turner* (1994) 8 Cal.4th 137, 171.)

Prospective juror S.'s negative experiences are not comparable to juror 8's experiences. Juror 8 explained he had been stopped once by law enforcement officers, "Well, I got stopped in Illinois, and I really feel it was a scam. They were watching for Californians. I think it was a setup. [¶] They had a school bus going down the freeway, and it stops right in the middle of the freeway. And just as you get ready to pass it, flops out the stop sign. Then right away, there's a patrolman on your tail. And you['re] from out of state, so they let you off with an $80 payoff because they know you're on your way home.... [¶] ... I'm sure it was a setup." He said that he believed "the California plates had something to do with it." Juror 8 had been the victim of a car burglary and was disappointed that law enforcement had not done a thorough investigation.

Juror 8's negative experience out of state and the car burglary is not comparable to juror S.'s 14 years of perceived harassment by law enforcement based in part on race.

The Attorney General notes another juror who claimed he would be fair was removed by the prosecutor. Juror C. had been assaulted by a Roseville police officer in 2002 and filed a civil suit against him. Juror C. had three pending criminal charges against him for the same instance. Juror C. claimed he harbored no animosity towards law enforcement. The prosecutor exercised his third peremptory challenge to remove prospective juror C.

Defendant claims that when the prosecutor was concerned with the educational or occupational backgrounds of other jurors, who defendant claims are Caucasian, the prosecutor asked several questions but asked none of prospective juror J. Defendant notes that the prosecutor questioned a prospective juror concerning his undergraduate degree in bio-chemistry and graduate degree in environmental engineering and two other jurors about their law degrees and positions. Defendant claims that although prospective juror J. had a master's degree in social work, she had not pursued a career in social work and instead had worked in property management for "18 years."

The prosecutor stated a nondiscriminatory reason for exercising his peremptory challenge to remove juror J. Juror J. had a master's degree in social work and had an internship in the psychiatric department of the "branch" which the prosecutor and defense counsel interpreted as the jail. Peremptory challenges based on experience in social services is a proper race-neutral reason. (*People v. Trevino* (1997) 55 Cal.App.4th 396, 411; *People v. Perez* (1996) 48 Cal.App.4th 1310, 1315; see also *People v. Landry* (1996) 49 Cal.App.4th 785, 790-791; *People v. Barber* (1988) 200 Cal.App.3d 378, 394.)

Prospective juror J.'s educational background in social work is simply not comparable to the jurors with backgrounds in law, bio-chemistry or environmental engineering. The prosecutor focused on her internship experience in the psychiatric unit, presumably the jail. Defendant's statement that juror J. had been employed in property management for 18 years is not supported by the record. She stated she had lived in the Greenhaven area for 18 years.

Moreover, the jury included an African-American. " 'While the fact that the jury included members of a group allegedly discriminated against is not conclusive, it is an indication of good faith in exercising peremptories, and an appropriate factor for the trial judge to consider in ruling on a *Wheeler* objection.' [Citation.]" (*Ward, supra*, 36 Cal.4th at p. 203.) When defendant made his *Wheeler* objection, the trial court noted that the jury included another African-American after the prosecutor excused jurors S. and J. That juror's name is redacted in the reporter's transcript which

means that juror sat on the jury (Cal. Rules of Court, rule 31.3(b)(1), (c)). Defendant challenges the reliance upon only record redaction to support this fact. He has cited nothing in the record to suggest otherwise. He simply argues that "[n]either counsel nor the court ever state[d] that the redacted juror sat on the jury." We are not persuaded.

Defendant has failed to demonstrate that the prosecutor improperly exercised his peremptory challenges. We reject defendant's contention that the trial court erroneously denied his *Wheeler-Batson* motion.

*People v. Jackson*, 2006 WL 1660795 at *1-6.

*Legal Standard for Batson Violation*. "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). When a defendant alleges a *Batson* violation, a three-part burden shifting test is used to determine if the potential juror was challenged on the basis of impermissible discrimination. First, the defendant must make a *prima facie* showing that the challenge was based on an impermissible ground, such as race. *Id.* at 96.  To establish a *prima facie* case, the defendant must show that the facts and circumstances of the case raise an inference that the prosecution has excluded jurors based on race.  *Batson v. Kentucky*, 476 U.S. at 96; *Powers v. Ohio*, 499 U.S. 400, 404 (1991); *McClain v. Prunty*, 217 F.3d 1209, 1919-20 (9th Cir. 2000).  This is a burden of production, not a burden of persuasion.  *Green v. Lamarque*, 532 F.3d 1028, 1029 (9th Cir.2008); *accord Johnson v. California*, 545 U.S. 162, 170-71 (2005).  Second, if the trial court finds the defendant has made a *prima facie* case of discrimination, the burden then shifts to the prosecution to offer a race-neutral reason for the challenge that relates to the case. *Green v. Lamarque*, 532 F.3d at 1030; *accord Batson v. Kentucky*, 476 U.S. at 97. Third, if the prosecutor offers a race-neutral explanation, the trial court must decide whether the defendant has proved that the prosecutor's motive for the strike was purposeful racial discrimination.  *Green v. Lamarque*, 532 F.3d at 1030; *accord Johnson v. California*, 545 U.S. at 168; *Batson v. Kentucky*, 476 U.S. at 98.

Where the State has put forward a race-neutral reason at step two, the court evaluates "all relevant circumstances," *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005), at step three, including whether the state's stated reasons are pretextual, to decide whether the prosecutor's motive for the strike establishes purposeful discrimination.  In applying the *Batson* test to determine a prosecutor's discriminatory intent, the trial court must determine whether the stated reasons are race-neutral, relevant to the case, and "the prosecutor's genuine reasons for exercising a peremptory strike, rather than pretexts invented to hide

purposeful discrimination." *Green v. LaMarque*, 532 F.3d at 1030. The trial court must undertake a

sensitive inquiry into all circumstantial and direct evidence bearing on the prosecutor's intent. *Id.*  In

*Miller-El v. Dretke, supra*, the Supreme Court employed a comparative juror analysis, comparing the

characteristics of a struck juror with the characteristics of other potential jurors, particularly those jurors

whom the prosecutor did not strike. *See Miller-El v. Dretke*, 545 U.S. at  241, 247-48.

     *Factual Findings on Review of the Record*. The California Court of Appeal decision accurately

reflects the record.  Juror S, an African-American male, indicated that, because someone close to him had

been the victim of a crime, he wanted to talk about it in private (Dkt. 29, Lodged Document 10, at 22-23);

that his niece and nephew had been molested by a brother in law and his father had been robbed (Dkt. 29,

Lodged Document 10, at 33-35); and that an acquaintance had been convicted of rape (Dkt. 29, Lodged

Document 10, at 35-38).  The prosecutor observed that juror S hesitated and bit his lip when asked  if he

could be fair and impartial; juror S responded that he was hesitating "because, I didn't have any baggage,

but with my niece and nephew, I have a lot of baggage" (Dkt. 29, Lodged Document 10, at 36-37).  Juror

S stated that he had been stopped quite often by mostly Caucasian police when he was between the ages of

16 and 30 (Dkt. 29, Lodged Document 10, at 98-99).  Juror S also indicated that he socialized with a

retired sheriff and his wife, and with a Sacramento police officer  (Dkt. 29, Lodged Document 10, at 39-

41); and that he would be comfortable sitting on a case like this (Dkt. 29, Lodged Document 10, at 38).

     Juror J, an African-American female, stated that she had lived in the Greenhaven area for eighteen

years. Dkt. 29, Lodged Document 10, at 188.  When asked by the court if there was any reason she could

think of why she couldn't be fair to both sides, Juror J stated: "No.  But I would like to disclose when I

was in graduate school, I did do internship at the branch in the psychiatric department."  Dkt. 29, Lodged

Document 10, at 188.

     Juror number 8, who was seated on the jury and is not African-American, stated that he had a friend

who is retired from the highway patrol and is working for the Sacramento County Sheriff now (Dkt. 29,

Lodged Document 10, at 46) and that he believed that he was the victim of a setup five to seven years

before when he was stopped on the highway; and that he believed that having California license plates had

something to do with it (Dkt. 29, Lodged Document 10, at 56-57).  Juror number 8 also stated that his car

had been broken into on two occasions, and that he was disappointed when the police did not file a report,

but that he got over it; and that he held onto a piece of fingerprint material for two to four weeks before he realized that the police didn't have time to investigate this kind of crime.  Dkt. 29, Lodged Document 10, at 95-96.

Defense counsel moved for a mistrial on the basis that the prosecution excused jurors S and J for racial reasons (Dkt. 29, Lodged Document 7, at 76-77).  The record shows that another African-American juror remained on the venire and was passed twice by the prosecutor; because the name of that juror was redacted in the court reporter's transcript, it appears that that juror was seated and participated in the case (Dkt. 29, Lodged Document 7, at 77).  The record showed that the prosecutor gave his reasons for the peremptory strikes (Dkt. 29, Lodged Document 7, at 78-79); defense counsel "let Mr. [S] slide because I anticipated the response that would be made" (Dkt. 29, Lodged Document 7, at 78-79); that juror J had put down (apparently on a jury questionnaire) that she had a Master of Social Work degree (Dkt. 29, Lodged Document 7, at 78-79); and that the trial judge concluded, with regard to juror J that "if [the prosecutor] is inclined to think that a social worker might not be best for his jury, that the Court would have to accept that (Dkt. 29, Lodged Document 7, at 80).

*Batson Test*.  The court next applies the facts of the case to the three elements of the *Batson* test.  With regard to the first element, the trial judge did not find on the record that defendant had made a *prima facie* showing that the challenge was based on race.  However, both jurors S and J were African-American and were excluded from the jury by peremptory challenge of the prosecutor.

Assuming that defendant had made a *prima facie* case of exclusion based on race, with the second element of the test, the burden shifts to the prosecution to offer a race-neutral reason for the challenge that relates to the case.  In this case, the prosecutor stated a race-neutral reason for the challenges to jurors S and J.  With regard to juror S, the prosecutor stated that Mr. S had had a history with law enforcement where for a certain point in his life he felt he was stopped for no reasons, and "[w]hether or not he still harbors any animosity is not something I wanted to roll the dice with."  Dkt. 29, Lodged Document 7, at 78.  With regard to juror J, the prosecutor stated that she was dismissed because she had a Master of Social Work degree and that she had worked "in the, probably in the psych unit as a sociology of some sort.  I don't have any other social workers up on the panel.  And if I had my choice, I wouldn't have any."

1   Dkt. 29, Lodged Document 7, at 78.  The prosecutor stated race-neutral reasons for excluding jurors S
2   and J from the jury.

3       The third step in the *Batson* analysis is for the trial court to determine whether the defendant proved
4   that the prosecutor's motive for the strike was purposeful racial discrimination.  In this case, defense
5   counsel did not state reasons why he believed that juror S was excluded from the jury on the basis of his
6   race.  In fact, defense counsel stated that "I let Mr. [S] slide because I anticipated the response that would
7   be made."  Dkt. 29, Lodged Document 7, at 80.  The trial court did not specifically address the peremptory
8   challenge regarding juror S.  It appears that the trial judge and counsel tacitly acknowledged that there was
9   sufficient basis other than race for challenging juror S. Further, the record shows that juror S had had
10  experience with the police, in which he believed that, for a number of years, he had been targeted because
11  of his race.  Juror 8, who was seated on the jury, had also had experience with being stopped by the police
12  once, while in Illinois; that experience was based upon his living in California, not on the basis of race.  The
13  California Court of Appeal concluded that the experiences of juror S and juror 8 were not comparable.
14  That conclusion is reasonable, based upon the record.  Further, in addition to the reasons set forth by the
15  prosecutor, juror S had "a lot of baggage" with regard to the molestation of his niece and nephew, asked to
16  discuss the issue in private, and hesitated and bit his lip when asked if he could be fair and impartial.  The
17  record does not show that the prosecutor's motive for the strike of juror S was purposeful discrimination.

18      With regard to juror J, the trial judge accepted the prosecutor's reason that he struck this juror
19  because of her degree in social work and her experience at the jail.  Although petitioner maintains that the
20  prosecutor should have asked more follow-up questions of juror J, the prosecutor stated that there were no
21  other social workers on the panel, and that if he had his choice, he would not have any on the jury.  Dkt.
22  29, Lodged Document 7, at 78.  It is unclear why the prosecutor should have asked further questions when
23  a social service background was unacceptable for him.  Further, while the record shows that juror J was a
24  property manager, it does not show that she had been a property manager for eighteen years.  The record
25  does not show that the prosecutor's motive for the strike of juror J was purposeful discrimination.

26      Finally, even though jurors S and J were African-American, the record shows that one other
27  African-American was not challenged, and was apparently seated as a juror.  In any event, the record
28  shows that the prosecutor did not challenge one African-American in the jury pool, and that individual was

1  still part of the jury pool when the *Batson* challenges were made.

2       *Conclusion*.  The California state court decisions rejecting petitioner's claim, that his constitutional

3  rights were violated when the prosecutor used peremptory challenges to strike African-American jurors S

4  and J, were not contrary to or an unreasonable application of clearly established federal law, as determined

5  by the Supreme Court, nor did they result in a decision that was based on an unreasonable determination of

6  the facts in light of the evidence presented to the state courts.  Petitioner's *Batson* claim is without merit.

7       **2.      Criminal Propensity Evidence**

8       *Claim*.  Petitioner contends that the admission of evidence regarding his prior sexual offenses to

9  prove disposition to commit the charged sexual offense violated his right to Due Process under the Fifth

10 and Fourteenth Amendments.

11      *California Court of Appeal Decision*.  The California Court of Appeal summarized this claim as

12 follows:

13      Defendant contends the trial court violated his constitutional rights by admitting evidence of his
        prior sex crime pursuant to Evidence Code section 1108. He argues Evidence Code section 1108 is
14      unconstitutional, violating his federal constitutional right to due process. FN2  Even assuming the
        statute is constitutional, he argues the jury was erroneously instructed that it could "rely exclusively
15      on this evidence to convict...." He further argues reversal is required because the jury was allowed
        to convict on predisposition evidence proved by a preponderance of the evidence. We reject
16      defendant's contention.

17      Over defense objection based on remoteness, similarity and Evidence Code section 352, the trial
        court granted the prosecutor's in limine motion to introduce evidence of defendant's prior 1984
18      conviction for sexual assault of Linda H. pursuant to Evidence Code section 1108 and *People v.
        Falsetta* (1999) 21 Cal.4th 903(*Falsetta*). FN3
19
20      On February 17, 1984, defendant broke into Linda H.'s apartment through a kitchen window,
        entered her bedroom and, holding a straight edge razor, jumped on her while she was asleep in bed.
21      When she yelled and tried to fight back, he slapped her in the face and threatened to kill her if she
        did not shut up. He said, "I came here to eat your pussy," and unzipped his pants. H. fought back
22      harder. Defendant bit her below her breast. Her son opened her bedroom door and turned on the
        light. Defendant ran out of the apartment through the front door. H. had numerous bruises on her
23      body. Defendant's sister lived next door in the same apartment complex. Defendant's palm print was
        recovered from the kitchen window and the wall nearby. When interviewed by an officer and asked
24      whether he knew why, defendant stated he thought it was about a rape. He admitted knowing H.
        and claimed he had been in her apartment four or five times, including her bedroom once and
25      kitchen. He claimed he was with Tiny the night of the sexual assault. When told his prints were
        found at H.'s apartment, he asked "Where at?"

26      The trial court instructed the jury in the language of CALJIC Nos. 2.50.01 [evidence of other
        sexual offenses], 2.50.2 [definition of preponderance of the evidence], 9.09 [assault with intent to
27      commit certain felonies] and 9.00 [assault-defined]. FN4

28      Defendant recognizes that *Falsetta* rejected the argument that admission of propensity evidence
        pursuant to Evidence Code section 1108 violates a defendant's constitutional right to due process.

He claims *Falsetta* was wrongly decided and raises the issue to preserve his right to further review. We are bound by *Falsetta* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d *450(Auto Equity Sales)*) and accordingly reject this argument.

---

FN2. Defendant also cites but does not discuss his rights to confrontation and a fair trial. We likewise will not discuss the impact upon such rights.

FN3. Evidence Code section 1108 provides in relevant part, as follows:

"(a) In a criminal action in which the defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense or offenses is not made inadmissible by Section 1101, if the evidence is not inadmissible pursuant to Section 352.

[¶] ... [¶]

"(d) As used in this section, the following definitions shall apply:

"(1) 'Sexual offense' means a crime under the law of a state or of the United States that involved any of the following:

[¶] ... [¶]

"(B) Any conduct proscribed by Section 220 of the Penal Code, except assault with intent to commit mayhem."

FN4. The trial court instructed as follows: "Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in this case. Sexual offense means a crime under the laws of a state or of the United States that involves any of the following: That is any conduct made criminal by Penal Code Section 220. The elements of this crime are set forth elsewhere in this instruction. If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused. However, if you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crimes. You must not consider this evidence for any other purpose. [CALJIC No. 2.50.01]

"Preponderance of the evidence means evidence that was more-that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it. You should consider all the evidence bearing upon every issue regardless of who produced it. [CALJIC No. 2.50.2]

"Every person who assaults another with the specific intent to commit forcible oral copulation is guilty of the crime of assault to commit forcible oral copulation in violation of Penal Code Section 220. In order to prove this crime, each of the following elements must be proved: One, a person was assaulted; and, two, the assault was made with the specific intent to commit forcible oral copulation. The crime of assault with intent to commit forcible oral copulation is complete if the assault is made and at any moment during the assault the aggressor intends to commit forcible oral copulation upon the person assaulted. [CALJIC No. 9.09]

"In order to prove an assault, each of the following elements must be proved: One, a person willfully and unlawfully committed an act which by its nature would probably and directly result in the application of physical force on another person; the person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that physical force would be applied to another person; and three, at the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another. The word willfully means the person committing the act did so intentionally. However, an assault does not require an intent to cause injury to another person or an actual awareness of the risk that might occur to another person. To constitute an assault, it is not necessary that any actual injury be inflicted. However, if an injury is inflicted, it may be considered in connection with other evidence in determining whether an assault was committed and, if so, the nature of the assault. [CALJIC No. 9.00]"

*People v. Jackson*, 2006 WL 1660795, * 6-7.

*Legal Standard for Evidentiary Ruling*. Federal courts defer to a state court's interpretation of state law unless the court's interpretation is untenable or amounts to a subterfuge to avoid federal review of a constitutional violation. *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir.), *cert. denied* 459 U.S. 1055 (1982).

Habeas relief is unavailable for error in the interpretation or application of state evidentiary rules. *Estelle v. McGuire,* 502 U.S. 62 (1991); *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985). In order to obtain habeas relief for a violation of state evidence rules, a petitioner must affirmatively demonstrate that the admission of the questioned evidence rendered the trial so fundamentally unfair as to violate federal due process. *Butcher v. Marquez*, 758 F.2d 373, 378 (9th Cir. 1985).

*Factual Findings on Review of the Record*. The California Court of Appeal opinion accurately reflects the record. Linda H. testified consistent with the findings in the Court of Appeal decision. Dkt. 29, Lodged Document 7, at 252-268. The retired Sacramento police officer who was the crime scene investigator in the Linda H. incident in 1984 also testified consistent with the Court of Appeal decision. Dkt. 29, Lodged Document 7, at 268-281.

*Analysis and Conclusion*. The United States Supreme Court has not decided whether admission of prior crimes evidence in a criminal trial violates a defendant's right to Due Process. *See Estelle v. McGuire*, 502 U.S. at 75 n.5 ("Because we need not reach the issue, we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime."). *See also Alberni v. McDaniel*, 458 F.3d 860, 863-64 (9th Cir. 2006).

In *People v. Falsetta*, 21 Cal.4th 903, 915-922 (1999), a California case in which a defendant was

convicted of sex crimes after admission of evidence regarding prior sex offenses as propensity evidence, the California Supreme Court concluded that Evidence Code Section 1108, which permits evidence of prior sex offenses to be used to show propensity to commit a charged sex crime, does not violate Due Process. The California Supreme Court reasoned that (1) evidence of the prior acts is at least circumstantially relevant to the issue of the defendant's disposition or propensity to commit sex offenses; and (2) that the trial court could exclude the evidence under Evidence Code Section 352, which gives the court discretion to exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time or create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. The California Supreme Court further concluded that the trial court erred in declining to give a special limiting instruction on the use of that evidence, but that the error was harmless. *Id.* at 922-925. The California Supreme Court noted that the 1999 revision of CALJIC No. 2.50.01 adequately addressed the deficiencies in the *Falsetta* jury instructions. *Id.* at 923-924.

Defendant in *Falsetta* filed a petition for writ of certiorari to the United States Supreme Court, raising the following issues: (1) Whether the admission of prior sex crimes to prove criminal disposition under Evidence Code section 1108 violated petitioner's Fourteenth Amendment right to due process of law; and (2) Whether the trial court erred by refusing to give any limiting instruction on the proper use of the prior sex crimes under Evidence Code section 1108. *Falsetta v. California*, 1998 WL 34188058.   On April 24, 2000, the United States Supreme Court denied the petition for writ of certiorari. *Falsetta v. California*, 529 U.S. (2000).

CALJIC No. 2.50.01, as revised in 1999, was the instruction given in petitioner's case. *See* instruction as set forth in FN 4 in the California Court of Appeal decision above. The United States Supreme Court has not decided whether admission of prior sex crimes to prove criminal disposition violates a defendant's Due Process rights under the United States Constitution. The United States Supreme Court denied review in *Falsetta*, a case in which that issue was one of the issues presented. Accordingly, the California state court decisions rejecting petitioner's claim that admission of evidence regarding his prior sexual offenses to prove disposition to commit another sexual offense violated his right to Due Process under the Fifth and Fourteenth Amendments were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a

1  decision that was based on an unreasonable determination of the facts in light of the evidence presented to

2  the state courts.  Petitioner's claim is without merit.

3        **3.**     **Instructions**

4       *Claim.* Petitioner contends that his right to Due Process was violated when the court instructed the

5  jury that, if proved, the jury could rely on criminal disposition alone to find him guilty of the charged

6  crimes. Petitioner argues that these instructions undercut the presumption of innocence and the right to

7  proof beyond a reasonable doubt of every element of the charged offense by permitting the jury to infer

8  guilt based on a finding of criminal disposition alone.

9       *California Court of Appeal Decision.*  The California Court of Appeal summarized this claim as

10  follows:

11       Defendant next argues that the trial court erroneously instructed the jury that it could rely
"exclusively" or solely on this evidence to convict. We reject this argument.

12

13       In *People v. Reliford* (2003) 29 Cal.4th 1007(*Reliford*), the California Supreme Court rejected the
argument that CALJIC No. 2.50.01 (1999 rev.) as modified, could have been "interpreted to

14  authorize a guilty verdict based solely on proof of uncharged conduct" or that a "juror could
reasonably interpret the instructions to authorize conviction of a charged offense based solely on

15  proof of an uncharged sexual offense."(Id. at pp. 1013, 1015.) In *People v. Pescador* (2004) 119
Cal.App.4th 252(*Pescador*), this court rejected a challenge to jury instructions similar to those in

16  *Reliford* [CALJIC No. 2.50.02 (2000 rev.) and CALJIC No. 2.50.2] in a case involving prior acts
of domestic violence evidence (Evid.Code, § 1109), relying on *Reliford* and concluding that there
was no risk that the jury could convict based on disposition alone because the jury was so

17  instructed. (*Pescador, supra,* 119 Cal.App.4th at pp. 258-262.)

18       Defendant argues *Pescador* should be reconsidered and that *Reliford* did not consider the issue
presented in *Pescador* and the issue presented here. *Reliford* held that the instructions did not lessen

19  the prosecution's burden of proof. (*Reliford, supra,* 29 Cal.4th at pp. 1015-1016.) The instruction
here is significantly different than those before *Reliford* and *Pescado*r, including the statement, "If

20  you determine an inference properly can be drawn from this evidence, this inference is simply one
item for you to consider along with all other evidence in determining whether the defendant has

21  been proved guilty beyond a reasonable doubt of the charged crimes." The jury here was instructed
that the prior conviction alone was insufficient to prove the charged offense. We reject defendant's

22  arguments.

23       Finally, defendant argues reversal is required because the jury was allowed to convict on disposition
evidence proved by a preponderance of the evidence. Defendant claims the instructions allowed the

24  jury to infer guilt of the charged offense based on proof of the predicate fact, that is, the prior
conduct, as long as it was proven by a preponderance of the evidence. As defendant recognizes,

25  *Reliford* rejected this claim as do we. (*Auto Equity Sales, supra,* 57 Cal.2d 450.)

26  *People v. Jackson*, 2006 WL 1660795 at * 7-8.

27       *Legal Standard for Jury Instructions.*  Ordinarily, issues regarding jury instructions present

28  questions of state law only and are, therefore, not susceptible of federal habeas corpus review. *Estelle v.*

ORDER
Page - 16

1    *McGuire*, 502 U.S. 62, 71-72 (1991). A faulty jury instruction requires habeas relief only if the instruction

2    by itself so infected the entire trial that the resulting conviction violates due process. *Estelle v. McGuire*,

3    502 U.S. at 72; *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The instruction must be considered in the

4    context of the instructions as a whole and the trial record. *Estelle v. McGuire*, 502 U.S. at 72; *Boyde v.*

5    *California*, 494 U.S. 370, 378 (1990); *Cupp v. Naughton*, 414 U.S. 141, 147 (1973). The federal habeas

6    court must determine whether there is a reasonable likelihood that the jury has applied the challenged

7    instruction in a way that violates the Constitution. *Estelle v. McGuire*, 502 U.S. at 63 (quoting *Boyde v.*

8    *California*, 494 U.S. at 380).

9         *Factual Findings on Review of the Record.* In FN 4, the California Court of Appeal set forth the

10   instructions that petitioner challenges. Those instructions are repeated here for ease of reference, as

11   follows:

12   FN4. Evidence has been introduced for the purpose of showing that the defendant engaged in a
     sexual offense other than that charged in this case. Sexual offense means a crime under the laws of
13   a state or of the United States that involves any of the following: That is any conduct made criminal
     by Penal Code Section 220. The elements of this crime are set forth elsewhere in this instruction. If
14   you find that the defendant committed a prior sexual offense, you may, but are not required to, infer
     that the defendant had a disposition to commit sexual offenses. If you find that the defendant had
15   this disposition, you may, but are not required to, infer that he was likely to commit and did commit
     the crimes of which he is accused. However, if you find by a preponderance of the evidence that the
16   defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a
     reasonable doubt that he committed the charged crimes. If you determine an inference properly can
17   be drawn from this evidence, this inference is simply one item for you to consider along with all
     other evidence in determining whether the defendant has been proved guilty beyond a reasonable
18   doubt of the charged crimes. You must not consider this evidence for any other purpose. [CALJIC
     No. 2.50.01]

19
     Preponderance of the evidence means evidence that was more-that has more convincing force than
20   that opposed to it. If the evidence is so evenly balanced that you are unable to find that the evidence
     on either side of an issue preponderates, your finding on that issue must be against the party who
21   had the burden of proving it. You should consider all the evidence bearing upon every issue
     regardless of who produced it. [CALJIC No. 2.50.2]

22
     Every person who assaults another with the specific intent to commit forcible oral copulation is
23   guilty of the crime of assault to commit forcible oral copulation in violation of Penal Code Section
     220. In order to prove this crime, each of the following elements must be proved: One, a person
24   was assaulted; and, two, the assault was made with the specific intent to commit forcible oral
     copulation. The crime of assault with intent to commit forcible oral copulation is complete if the
25   assault is made and at any moment during the assault the aggressor intends to commit forcible oral
     copulation upon the person assaulted. [CALJIC No. 9.09]

26
     In order to prove an assault, each of the following elements must be proved: One, a person willfully
27   and unlawfully committed an act which by its nature would probably and directly result in the
     application of physical force on another person; the person committing the act was aware of facts
28   that would lead a reasonable person to realize that as a direct, natural and probable result of this act
     that physical force would be applied to another person; and three, at the time the act was

committed, the person committing the act had the present ability to apply physical force to the person of another. The word willfully means the person committing the act did so intentionally. However, an assault does not require an intent to cause injury to another person or an actual awareness of the risk that might occur to another person. To constitute an assault, it is not necessary that any actual injury be inflicted. However, if an injury is inflicted, it may be considered in connection with other evidence in determining whether an assault was committed and, if so, the nature of the assault. [CALJIC No. 9.00]

Dkt. 29, Lodged Document 11, at 140-143.

*Analysis and Conclusion*. CALCJIC No. 2.50.01 instructed the jury (1) that if they find that the defendant committed a prior sexual offense, the jury may, but are not required to, infer that the defendant had a disposition to commit sexual offenses; (2) that if they find that the defendant had this disposition, they may, but are not required to, infer that he was likely to commit and did commit the crimes of which he is accused; (3) that if they find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes; (4) that if they determine an inference properly can be drawn from this evidence, this inference is simply one item for them to consider along with all other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crimes; and (5) that they must not consider this evidence for any other purpose.

The California Court of Appeal noted that the jury was instructed that the prior conviction alone was insufficient to prove the charged offense, and that the instruction did not allow the jury to infer guilt of the charged offense based on proof of the prior conduct. The California Court of Appeal conclusions were consistent with the instructions given to the jury. Considered in the context of the jury instructions as a whole, there is not a reasonable likelihood that the jury applied the challenged instructions in a way that violated the United States Constitution.

The California state court decisions rejecting petitioner's claim that his right to Due Process was violated when the court instructed the jury that, if proved, the jury could rely on criminal disposition alone to find him guilty were not contrary to or an unreasonable application of clearly established federal law, as determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable

1   determination of the facts in light of the evidence presented to the state courts.  Petitioner's claim is

2   without merit.

3                                  EVIDENTIARY HEARING

4           If a habeas applicant has failed to develop the factual basis for a claim in state court, an evidentiary

5   hearing may not be held in federal court unless (A) the claim relies on (1) a new rule of constitutional law,

6   made retroactive to cases on collateral review by the Supreme Court that was previously unavailable, or (2)

7   a factual predicate that could not have been previously discovered through the exercise of due diligence;

8   and (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that

9   but for constitutional error, no reasonable fact finder would have found the applicant guilty of the

10  underlying offense.  28 U.S.C. §2254(e)(2) (1996).  Petitioner's claims rely on established rules of

11  constitutional law.  Further, petitioner has not set forth any factual basis for his claims that could not have

12  been previously discovered by due diligence.  Finally, the facts underlying petitioner's claims are insufficient

13  to establish that no rational factfinder would have found him guilty of the crime. Therefore, petitioner is not

14  entitled to an evidentiary hearing.

15                                     CONCLUSION

16          The state court decisions denying petitioner's claims for relief and upholding petitioner's

17  convictions were not contrary to or an unreasonable application of clearly established federal law, as

18  determined by the Supreme Court, nor did they result in a decision that was based on an unreasonable

19  determination of the facts in light of the evidence presented to the state courts.  The petition for writ of

20  habeas corpus should be denied and the case dismissed with prejudice.

21                          CERTIFICATE OF APPEALABILITY

22          The district court should grant an application for a Certificate of Appealability only if the petitioner

23  makes a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3).  To obtain a

24  Certificate of Appealability under 28 U.S.C. § 2253(c), a habeas petitioner must make a showing that

25  reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different

26  manner or that the issues presented were adequate to deserve encouragement to proceed further.  *Slack v.*

27  *McDaniel*, 120 S.Ct. 1595, 1603-04 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).

28

1    When the court denies a claim on procedural grounds, the petitioner must show that jurists of

2    reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right

3    and that jurists of reason would find it debatable whether the district court was correct in its procedural

4    ruling. *Slack v. McDaniel*, 120 S.Ct. at 1604.

5    In the event that petitioner appeals the denial of his habeas corpus petition to the Ninth Circuit U.S.

6    Court of Appeals, the court has determined that a Certificate of Appealability should be granted.  The court

7    has reviewed all of the claims on the merits.  While the court has denied the petition for writ of habeas

8    corpus, reasonable jurists could debate whether, or agree that, the petition should have been resolved in a

9    different manner or that the issues presented were adequate to deserve encouragement to proceed further.

10   Accordingly, a Certificate of Appealability should be granted on the following claims:

11   1.  Because the prosecutor used peremptory challenges to strike two prospective black jurors called
to the jury box, and because the prosecutor's given reason was pretext for racial discrimination,
12   petitioner's subsequent conviction violated the Sixth and Fourteenth Amendments of the United
States Constitution.

13
14   2.  The admission of evidence regarding petitioner's prior sexual offenses to prove disposition to
commit the charged sexual offense violated his right to Due Process under the Fifth and Fourteenth
Amendments of the United States Constitution.

15
16   3.  The trial court violated petitioner's Due Process rights under the United States Constitution by
instructing the jury that if proved, the jury could rely on criminal disposition alone to find petitioner
guilty because the standard of proof for a true finding on propensity is less than reasonable doubt.

17
18   Therefore, it is hereby

19   **ORDERED** that the petition for writ of habeas corpus is **DENIED**.  A Certificate of Appealability

20   is **GRANTED** on the issues set forth above..

21   The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any

22   party appearing *pro se* at said party's last known address.

23   DATED this 19th day of February, 2009.

24

25   ROBERT J. BRYAN
United States District Judge

26

27

28

ORDER
Page - 20